## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARISADHAN PATRA and PETULA VAZ, | : : : | No. 4:14-cv-02265 |
| | : | (Judge Brann) |
| Plaintiffs, | : : | |
| v. | : : | |
| PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION, <u>et al.</u>, | : : : | |
| Defendants. | : : | |

## MEMORANDUM

### March 16, 2017

## I.    BACKGROUND

This is not an ordinary case with ordinary parties. But don't take the Court's word for it—simply ask the Plaintiffs themselves. Harisadhan Patra and Petula Vaz, former audiology professors at Bloomsburg University in Columbia County, Pennsylvania, have fired two sets of attorneys since commencing this "unique" employment discrimination case in late 2014. During a subsequent telephonic status conference, Doctors Patra and Vaz informed the Court that, contrary to its recommendation, they would not seek new counsel, as they are "uniquely positioned" to prosecute their own case.

Shortly thereafter and in the midst of discovery, the pair filed this motion, which alleges that the Defendants, through their counsel at the Pennsylvania Office of Attorney General, committed "fraud on the Court." Since then, Dr. Vaz has contacted my Chambers on approximately five different occasions to inquire as to the motion's status.

I have thoroughly reviewed Plaintiffs' allegations of impropriety and concluded that the complained-of occurrences are either wholly innocuous or best left for cross-examination. Quite certainly, however, Keli M. Neary, Esquire, and her colleagues at the Attorney General's Office have not attempted to defraud this Court. For the following reasons, Plaintiffs' motion to impose sanctions is denied.

## II.   LAW

"[W]hen presented with a <u>pro se</u> litigant, we 'have a special obligation to construe his complaint liberally.'"[1] However, "a litigant is not absolved from complying with . . . federal pleading requirements merely because s/he proceeds <u>pro se</u>."[2] For example, in the parallel context of initial pleadings, courts must

---

[1]   <u>Higgs v. Atty. Gen. of the U.S.</u>, 655 F.3d 333, 339 (3d Cir. 2011), <u>as amended</u> (Sept. 19, 2011) (quoting <u>United States v. Miller</u>, 197 F.3d 644, 648 (3d Cir.1999)).

[2]   <u>Thakar v. Tan</u>, 372 F. App'x 325, 328 (3d Cir. 2010) (per curium).

search <u>pro se</u> pleadings for "factual allegations sufficient to meet the plausibility requirement."[3] Federal courts apply this liberal, yet measured approach to <u>pro se</u> motions submitted at the discovery stage as well.[4]

Construed liberally, Plaintiffs' motion essentially requests that this Court impose sanctions on the Defendants for what they term "fraud upon the Court."[5] The allegations spring from a purported discovery dispute that has festered between the parties throughout the pendency of this action. Thus, I will evaluate Plaintiffs' accusations through the lens of Federal Rules of Civil Procedure 11 and 37, as well as the common law fraud upon the Court doctrine.

## A.    Rule 11

Federal Rule of Civil Procedure 11(b)(1) states as follows:

> By representing to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.[6]

---

[3]   <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011).

[4]   <u>See</u> <u>Henry v. Chapa</u>, No. 1:07-CV-00336-DGC, 2009 WL 602993, at *1 (E.D. Cal. Mar. 6, 2009).

[5]   The Court has reviewed and liberally construed the arguments from Plaintiffs' motion for sanctions (ECF 34) and Plaintiffs' reply brief (ECF 38).

[6]   Fed. R. Civ. P. § 11(b)(1).

Because Rule 11 "was designed to prevent abuse," courts have fashioned an objective test to implement it.[7] The test asks whether "after reasonable inquiry, the pleading, motion or other paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."[8]

Thus, the "standard for testing conduct is reasonableness under the circumstances."[9] "The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.' "[10] "It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation."[11] "These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while

---

[7]   Gaiardo v. Ethyl Corporation, 835 F.2d 479, 482 (3d Cir. 1987) (Weis, J.).

[8]   Id. (internal quotation marks omitted).

[9]   Id.

[10]   Keister v. PPL Corp., --- F.R.D. ----, No. 4:13-CV-00118, 2015 WL 9480455, at *3 (M.D. Pa. Dec. 29, 2015) (Brann, J.), aff'd Keister v. PPL Corp., --- Fed. App'x ---, No. 16-1552, 2017 WL 383366 (3d Cir. Jan. 27, 2017) (quoting Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986) (Weis, J.)).

[11]   Keister, --- F.R.D. at ----, 2015 WL 9480455, at *3. (quoting Gaiardo, 835 F.2d at 482).

recognizing the court's duty to serve the public efficiently."[12] Importantly, then, "Rule 11 sanctions must be based on [a party's] objective knowledge or belief at the time of the filing of a challenged paper."[13]

### B.    Rule 37

Rule 37(a), which outlines the requisite procedures that must be followed before seeking a motion to compel, provides, in pertinent part, as follows:

**(a)    Motion for an Order Compelling Disclosure or Discovery.**

> (1)    In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Its counterpart, Rule 37(b), provides for penalties in the event of noncompliance with an order compelling discovery. In pertinent part, it reads:

**(b)    Failure to Comply with a Court Order.**

. . .

> (2)    Sanctions Sought in the District Where the Action Is Pending.

---

[12]    Id. (quoting Gaiardo, 835 F.2d at 482).

[13]    Gaiardo, 835 F.2d at 482 (citing Jones v. Pittsburgh Nat. Corp., 899 F.2d 1350, 1359 (3d Cir. 1990)).

(A)    For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

    (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii)    striking pleadings in whole or in part;

    (iv)    staying further proceedings until the order is obeyed;

    (v)    dismissing the action or proceeding in whole or in part;

    (vi)    rendering a default judgment against the disobedient party; or

    (vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"If the court enters an order compelling discovery under Rule 37(a) and the order is disobeyed, the second step of the two-step process may be invoked under Rule 37(b)."[14] "Dismissal is a harsh sanction which should be resorted to only in extreme cases."[15] "The power of the court to prevent undue delays and to control its calendars must be weighed against the policy of law which favors disposition of litigation on its merits."[16] "Thus, we must give full regard for the severity of the sanction, granting dismissal sparingly and only when less drastic alternatives have been explored."[17]

## C.      Fraud upon the Court

For litigants to adequately demonstrate fraud upon the Court, they must prove: "(1) an intentional fraud; (2) by an officer of the Court; (3) which is directed at the Court itself; and (4) in fact deceives the Court."[18] Fraud upon the Court "may be justified only by 'the most egregious misconduct directed to the court itself,' [and] 'must be supported by clear, unequivocal and convincing

---

[14]   <u>Transportes Aereos de Angola v. Ronair, Inc.,</u> 104 F.R.D. 482, 498 (D. Del. 1985).

[15]   <u>Dyotherm Corp. v. Turbo Mach. Co.,</u> 392 F.2d 146, 148–49 (3d Cir. 1968) (Sheridan, J.)

[16]   <u>Id.</u> at 149.

[17]   <u>Jones v. Smith</u>, 99 F.R.D. 4, 5 (M.D. Pa. 1983) (Herman, J.), <u>aff'd,</u> 734 F.2d 6 (3d Cir. 1984).

[18]   <u>Herring v. United States</u>, 424 F.3d 384, 386 (3d Cir. 2005).

evidence.'"[19] Moreover, fraud upon the Court typically challenges "the very principle upon which our judicial system is based: the finality of judgment."[20] In fact, "[o]nly a small number of those acts that can be considered fraud amount to 'fraud upon the court.'"[21] Thus, the Honorable Ruggero J. Aldisert, writing for the United States Court of Appeals for the Third Circuit, has poetically explained that a party alleging fraud upon the Court not only has "a high hurdle to climb," but also "a steep cliff-face to scale."[22]

## III.    ANALYSIS

Plaintiffs' motion for sanctions failed to conform to the requirements imposed by the Local Rules.[23] Still, the Court liberally discerns ten distinct claims levied against the Defendants here. Each is meritless.

---

[19]   Id. at 387 (citing In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.3d 180, 185 (8th Cir. 1976)).

[20]   Herring, 424 F.3d at 386.

[21]   Kerwit Med. Prod., Inc. v. N. & H. Instruments, Inc., 616 F.2d 833, 836–37 (5th Cir. 1980).

[22]   Herring, 424 F.3d at 386.

[23]   See ECF 34. See also Local Rule 5.1(h) ("Each motion and each brief shall be a separate document.").

## A.     Failure to Designate Drs. Angelo and Gonzalez as "Supervisors"

Plaintiffs allege that Dr. Wislock falsely documented Defendants

Dr. Richard Angelo and Dr. Jorge E. Gonzalez as not having served as

"supervisors" in the Audiology and Speech Pathology Department for certain

time periods relevant to this case.[24] Specifically, Plaintiffs contend that

Dr. Wislock falsified documentation with the intent to misrepresent the data,

thus constituting fraud upon the Court.[25]

From the outset, the Court considers this a somewhat peripheral

argument, given that supervisory capacity under federal law is determined not

so much by title but by actual authority. "[A]n employee is a 'supervisor' for

purposes of vicarious liability under Title VII if he or she is empowered by the

employer to take tangible employment actions against the victim."[26]

Nevertheless, Plaintiffs' argument is without merit for several reasons.

 First, Plaintiffs merely allege that the document that Dr. Wislock provided

was "not factually correct." [27] By itself and with no comparators, that is a hollow

---

[24]   See ECF 35 Ex. 1.

[25]   See ECF 38 at 5.

[26]   Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).

[27]   ECF 38 at 5.

allegation. Plaintiffs state in their motion that "currently no depositions could be held since Plaintiffs cannot rely on the validity, accuracy, or integrity of Defendants' production."[28] Thus, because Plaintiffs distrust the Defendants and their productions, they have, of their own accord, essentially deprived themselves of the means necessary to prove their claims.

That procedural reality is fatal to this and several other of Plaintiffs' allegations. The claimed inconsistencies (to the extent that they even are inconsistencies) are just as compatible with mistake or inadvertence as they are with willful falsification. The applicable <u>mens rea</u>—intent—requires that the movants "demonstrate[ ], clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter."[29] Without more, Plaintiffs' empty assertions fall well short of the high standard for fraud upon the Court.

Moreover, Plaintiffs' decision to forego additional depositions pending the outcome of this dispute, despite the Court's admonition otherwise, is necessarily fatal to any claim under Rule 37. Because no motion to compel was filed, no

---

[28]   ECF 34 at 13.

[29]   <u>In re Am. Bus. Fin. Servs., Inc.,</u> 471 B.R. 354, 364 (Bankr. D. Del. 2012).

Court Order upon which a Rule 37(b) motion for sanctions may be grounded ever existed.

In addition, the lack of discovery renders this motion largely premature, as little evidence exists about which any reasonable comparisons may be made. The Court understands that the instant dispute would have hampered discovery in some ways, but conducting depositions in as feasible a manner as possible would have permitted the Plaintiffs to confront these witnesses on the alleged inconsistencies and to construct a complete factual record.

Even reaching the substantive law, Plaintiffs' claims fail to establish fraud upon the Court. Fraud upon the Court typically relates to the reopening of a final judgment. That is why courts apply such a stringent standard. The matter here between Plaintiffs and Defendants has not been finally adjudicated. In fact, the Court has yet to make any finding on the merits. Accordingly, fraud upon the Court is inapplicable. Nonetheless, the Court will address the remaining elements required for an adequate fraud upon the Court claim.

Plaintiffs fail the first element because they have not proven with clear and convincing evidence that Defendants' counsel acted intentionally to commit fraud. Plaintiffs offer only vacant claims that Dr. Wislock intentionally falsified

documentation without offering any contrasting evidence. Thus, because

Plaintiffs have not overcome the "high hurdle," their claim fails on this

independent ground.

By its second and third elements, fraud upon the Court requires an officer

of the Court to act with intentional fraud and direct such fraud at the Court itself.

Plaintiffs' argument again fails because Dr. Wislock, not Defendants' counsel,

purportedly acted with intentional fraud and the fraud was not directed at the

Court, but rather at Plaintiffs. In addition, no averments are offered as to

whether counsel for the Defendant knew of or countenanced the alleged

falsifications after making a reasonable inquiry into any of the documents' truth

or falsity. Likewise, Plaintiffs' failure to prove extreme or abusive conduct that

was unreasonable under the circumstances at the time of the filing is also fatal to

any Rule 11 claim that might liberally be drawn from Plaintiffs' papers.

Lastly, fraud upon the Court requires intentional fraud to deceive the

Court. Because elements one through three were not established, element four

cannot be met. Plaintiffs' argument regarding incomplete designation of

supervisors is therefore without merit. I note that several of these observations

could be made about each of Plaintiffs' allegations, but I emphasize them here.

**B.      Misdirected Phone Message from Dr. Wislock**

In addition to their claim that Dr. Wislock intentionally falsified documents, Plaintiffs also allege that Dr. Wislock lied about the circumstances of a phone call that he placed over four years ago.[30] In particular, Plaintiffs allege that the voicemail message that Dr. Wislock left for Dr. Vaz as to an earlier complaint was part of Defendants' "unconscionable scheme to destroy Plaintiffs' discrimination charges." [31] They say this is so because, in an interrogatory answer, the Defendants raised the call as an example of a response that was offered not to Dr. Vaz but to Dr. Patra.[32]

In levying such an allegation, Plaintiffs point to a prior email that Dr. Patra received from Dr. Soltz, which explained that Dr. Soltz was not authorized to discuss another co-worker's personnel issues with Dr. Patra.[33] Thus, Plaintiffs contend that Dr. Wislock's confusing the appropriate recipient of the voicemail

---

[30]   See ECF 34 Ex. B.

[31]   ECF 34 at 3.

[32]   See id.

[33]   See ECF 34 Ex. B at 1.

amounted to "willful, deliberate, and calculated falsification"—an apparent

contradiction in policy that further suggests a "false paper-trail" existed.[34]

Plaintiffs' allegations fail to consider the tragic flaw inherent in all humans:

error. Rather than a deliberate and calculated falsification, Dr. Wislock's having

left a voicemail on Dr. Vaz's phone and confusing it as a contact with Dr. Patra

appears to be nothing more than a simple mistake. Plaintiffs are a married couple

who have brought this litigation as husband and wife. They both have also

provided the same physical address to the Clerk of Court. From the outset, this

gives significant credence to the notion that Dr. Wislock merely confused the two

faculty members or their telephone numbers, or assumed that both spouses

could be reached at that same number. Without more, Dr. Wislock's actions are

more indicative of a mistake than they are willful misconduct.

Second, it is not unreasonable to conclude that were the voicemail message

relevant to the instant case, any prejudice suffered by Plaintiffs was cured.

Although an administrator may not discuss one spouse's complaints with the

other, it would be farfetched to argue that two spouses would similarly refrain

from discussing the substance of those complaints amongst themselves,

---

[34]   ECF 34 Ex. B at 2–3.

especially where they are co-plaintiffs in a federal lawsuit. In fact, the posture of this motion reveals that both spouses are aware of the contested message and that the message has collective rather than individual import to this action.

This argument, like several other of Plaintiffs' objections, was lodged prematurely. To be more precise, the substance of Plaintiffs' present motion serves more appropriately as fodder for a thorough cross-examination. Federal courts typically grant advocates measurable leeway for "all such cross-examination designed to test the recollection of a witness."[35] However, because Plaintiffs elected to file this motion before exhausting such avenues, they have necessarily limited themselves to a sparse factual record.

All of these factors considered, I view the voicemail issue to be substantively innocuous, an error in execution or recollection that in no way constitutes an unconscionable scheme by Defendants. To the contrary, Plaintiffs would do well to recall the words of English poet Alexander Pope: "To err is human."[36]

---

[35] United States v. Williams, 478 F.2d 369, 372 (4th Cir. 1973).

[36] "An Essay on Criticism" (1711).

## C.       Fabrication of Academic Data

Plaintiffs next allege that the Defendants produced documents containing fabricated program enrollment numbers and graduation rates.[37] Production of this allegedly falsified data—what the Plaintiffs loosely term a "hoodwinking"— was apparently compounded when the Defendants reported that same data to national accreditation agencies.[38] According to Plaintiffs, this subsequent reporting was intended to shield the Defendants from any liability by further fortifying the data.[39]

Plaintiffs again strand the Court with empty allegations. Movants may not solely rely on their "prior knowledge" about falsified data; rather, they must prove such falsification with clear and convincing evidence.[40] Further, it must be noted that publication of the same data to both the Plaintiffs and outside agencies is more consistent with the data being legitimate than it being fabricated. In my view, it would be much more troubling, for example, were the graduation rate at the subject institution 90% in one forum and 70% in another.

---

[37]   See ECF 38 at 6.

[38]   ECF 38 at 6; see ECF 37 at 11.

[39]   See id.

[40]   ECF 38 at 7.

### D.     Falsified Employee Compensation Data

Plaintiffs allege that the Defendants provided employee compensation data that "could not possibly have been accurate."[41] Although Plaintiffs concede that non-party Human Resources Director Jerry Reed produced this information, they nonetheless challenge the data's authenticity.

Consistent with their general approach to this litigation, Plaintiffs loft this allegation without any corroborating evidence. Rather, they base their conclusions upon mere speculation. As Human Resources Director, Mr. Reed has access to employee compensation data and has verified the reliability of such information to the best of his knowledge, fully aware of the risk of perjury.[42] To the contrary, Plaintiffs produced no evidence supporting their allegations. Instead, they merely allege that the requested information either was fabricated or contained "serious financial irregularities."[43] That conclusion is nothing more than Plaintiffs' personal opinions of the circumstances. It is not objective fact.

Further, Plaintiffs' argument that the requested information "was not factually correct" is also premature, owing to Plaintiffs' refusal to conduct

---

[41]   ECF 34 at 5.

[42]   See ECF 35 Ex. 6.

[43]   ECF 34 at 5.

depositions.[44] Had Plaintiffs cross-examined Mr. Reed and reasonably shown that the employee compensation data contained inconsistencies, their allegations would carry significantly greater merit. At this juncture, however, Plaintiffs' bare allegations are entirely unconvincing.

### E.   Fabrication of Course Assignments

Similar to the claim that Mr. Reed provided factually incorrect compensation data, Plaintiffs also allege that non-party Gay Anne Spezialetti willfully provided incorrect information regarding instructors' course assignments.[45] Plaintiffs find it "absurd" that a division secretary such as Ms. Spezialetti served as a "custodian of such records" and could ever be more knowledgeable about the assignments than they are.[46]

Needless to say, Plaintiffs' allegation that Ms. Spezialetti willfully provided factually incorrect information lacks a basis in fact. Plaintiffs have not supported this allegation with any evidence. Not only do Plaintiffs again make a hollow allegation, but like their prior averments, they also do so prematurely.

---

[44]   ECF 38 at 7.

[45]   ECF 37 at 13.

[46]   ECF 38 at 8.

Contrary to what Plaintiffs might believe, attempting to intensify the pressure on Defendants by adding additional claims has not yielded any diamonds. Instead, each losing allegation has only further eroded Plaintiffs' credibility in the eyes of the Court. This see-what-sticks approach had another deleterious impact on Plaintiffs' cause: Because the Court necessarily approaches every pleading in earnest, the unbridled hurling of accusations by Plaintiffs required a thorough review of the parties' papers, all of which cost valuable time.

### F.    Altered Departmental Minutes

Plaintiffs also allege that Ms. Spezialetti tampered with departmental meeting minutes by removing certain information from the published versions.[47] The source of this discrepancy apparently stems from the fact that revised minutes for each prior meeting were approved at the department's next meeting. However, Plaintiffs' allegations, at most, indicate a factual discrepancy—not tampering with evidence. For example, while one version of the meeting minutes may have provided a generalized summary of the matters discussed, the latter version may contained a more detailed record. Contrary to the Plaintiffs'

---

[47]   See ECF 37 at 13.

contention that the two copies were materially different, the discrepancy

between the two copies appears only to be the act of revision.

In addition, Plaintiffs have yet to depose Ms. Spezialetti. The proper course

of action in such a circumstance is for Plaintiffs simply to ask the witness

whether she tampered with that evidence. If they believe her response is untrue,

the appropriate recourse is cross-examination at trial. Thus, Plaintiffs' claim not

only is without merit, but also is raised prematurely.

### G.    Position Letter to the Equal Employment Opportunity Commission from Thomas May, Esquire

Plaintiffs also allege that one of Defendants' prior counsel, Thomas May,

Esquire, wrote a letter to the Equal Employment Opportunity Commission

(EEOC) that is overrun with falsifications.[48] As such, they argue that Defendants

should be held responsible for these misstatements.[49] Plaintiffs further allege that

Defendants commit fraud upon the Court because they provided falsified

documents in discovery identical to those that Mr. May provided to the EEOC.[50]

Plaintiffs' allegation, similar to those above, fails because it is not

supported by evidence (let alone that of the clear and convincing genre). In

---

[48]   See ECF 38 at 10.

[49]   See id.

[50]   See id. at 11.

Plaintiffs' motion, they purportedly rebut each statement in Mr. May's letter by claiming that those particular facts are false.[51] To support their rebuttal, Plaintiffs merely point the Court to highlighted information found among their exhibits, which portions are either irrelevant or fail to meet the exceptionally high burden that Plaintiffs face. At no point do Plaintiffs provide the Court with clear and convincing evidence that Mr. May's letter is tinged with falsifications. As such, this argument also rings hollow.

Next, Plaintiffs' argument that Defendants are responsible for Mr. May's letter is without merit. As I noted earlier, providing similar documentation to both Plaintiffs and the EEOC seems to justify the data's legitimacy, not render it fabricated. Because the Defendants and Mr. May provide similar counter-arguments to Plaintiffs' positions, the Court would be hard-pressed to conclude that both were rampantly falsified. Conversely,  the documents produced both by Defendants and Mr. May appear wholly legitimate and tend to debunk the specter of falsification that has apparently haunted the Plaintiffs.

---

[51]   See ECF 34 at 8.

### H.    Manufactured Evaluation Information

Plaintiffs also challenge the documents found in Dr. Patra's personnel file. This contention is exceptionally premature and undoubtedly misplaced. Plaintiffs base this allegation on two grounds. First, they allege that the documents were willfully manufactured to justify Defendants' decision not to renew Dr. Patra's employment contract. They believe this violated Dr. Patra's due process rights. Second, Plaintiffs contend that these documents were not requested in discovery and therefore constitute fraud upon the Court.

### 1.    Due Process Claim

Plaintiffs again claim the Defendants willfully fabricated documents without offering any support. Plaintiffs cannot continue to request the Court to review an exhibit in the hopes that it will discern and propound an argument on their behalf—particularly if that argument is fantasized or based upon some fraudulent conduct secreted away within the document's four corners. Contrary to their belief, Plaintiffs have yet to provide clear and convincing evidence to support their allegation that Defendants fabricated documents.

Moreover, Plaintiffs' allegation that Dr. Patra's due process rights were violated is without merit. In the public employment setting, the Due Process

clause "protects a liberty interest in reputation only when the plaintiff shows a 'stigma' to reputation <u>plus</u> deprivation of some additional right or interest."[52] This "stigma-plus" test requires the employer to "create[] and disseminate[] a false and defamatory impression about the employee in connection with his termination."[53] "The 'stigma' is the creation and dissemination of a false and defamatory impression, and the termination is the 'plus.'"[54]

Plaintiffs suffered no due process violation here. In particular, the Defendants did not disseminate false or defamatory impressions about the Plaintiffs that would in any way prevent Plaintiffs from finding other employment. In fact, Plaintiffs were offered other employment from a comparable university after Defendants notified them that their contracts would not be renewed.[55] In addition, Plaintiffs have provided no credible evidence that they were deprived of due process as it relates to the procedural aspects of the decision not to renew their contracts.

---

[52]  <u>Kohn v. School Dist. of City of Harrisburg</u>, 817 F.Supp.2d 487, 498 (M.D. Pa. 2011) (Caldwell, J.)

[53]  <u>Id.</u>

[54]  <u>Id.</u>

[55]  <u>See</u> ECF No. 34 at 11–12.

Plaintiffs use this allegation of a due process violation as a backdoor

vehicle to challenge the information found in the personnel file. As I discussed

above, Plaintiffs decided to forego examining Defendants and challenging

documents via deposition prior to filing this motion. Plaintiffs thus again resort

to mere allegations unsupported by concrete facts.

### 2.    Irrelevant Production Claim

Plaintiffs' also allege that they received unrequested documents in

discovery and that such productions constitute fraud upon the Court. That

contention is equally without merit. First, that the Defendants may have

produced marginally greater discovery than what might be admissible at trial is

not abhorrent or violative of the federal rules. To the contrary, it is precautionary.

Second, I note that this perceived issue is likely compounded by Plaintiffs' failure

to retain counsel. As such, Plaintiffs' argument is without merit.

### I.    Production of "Irrelevant" Records

Of all of the discovery disputes that I have faced in my tenure as a district

court judge, none have involved a claim that the opposing party has produced

too much. That was the case until I confronted this matter. Specifically, Plaintiffs

contend that a significant portion (about 50%) of Defendants' discovery

productions was irrelevant, thus violating the rules that govern such exchanges.[56]

Plaintiffs argue that the Defendants "intended to frustrate and harass Plaintiffs,

deplete Plaintiffs' limited resources, and obstruct justice."[57] Plaintiffs also

contend that Defendants acted with "blatant disrespect" towards the Court by

providing all of the documents that Plaintiffs requested and more.[58]

However, the Court finds that Defendants' overcautious productions were

designed to ensure, to the best of their abilities, that the pro se Plaintiffs had

access to all relevant pieces of evidence.[59] That is more than what the Federal

Rules of Civil Procedure require.  Given the litigious and rather unpredictable

nature of this action so far, efficient disposition of the case undoubtedly favors a

better-safe-than-sorry approach to discovery. Thus, Plaintiffs' arguments are

again without merit.

## J.      Conduct of Defense Counsel

Last, Plaintiffs suggest that counsel for the Defendants violated the state-

law equivalent of Model Rules of Professional Conduct 3.3 and otherwise

---

[56]   See ECF 38 at 12.

[57]   Id.

[58]   Id.

[59]   See ECF 37 at 16.

engaged in sanctionable conduct by providing false representations. To begin,

sanctions under Federal Rule of Civil Procedure 11 must "be based on [a party's]

objective knowledge or belief at the time of the filing of a challenged paper."[60]

That rule is expressly reserved for "exceptional circumstances."[61] While Plaintiffs

have repeatedly alleged that certain of the discovery documents provided by the

Defendants had been fabricated, they have yet to contradict the veracity of these

documents through articulable evidence. Thus, Plaintiffs have failed to show that

defense counsel objectively knew of the allegedly falsification of documents.

Plaintiffs' contention that Ms. Neary violated Model Rule of Professional

Conduct 3.3 is also meritless.[62] That rule prohibits lawyers from making "a false

statement of fact or law to a tribunal." Plaintiffs allege that Ms. Neary falsely

characterized this action as an "employment termination" dispute because the

case is truly unique.[63] Ms. Neary's phrasing did in fact reasonably characterize

this dispute, as it properly  encompassed the relevant issues here. Thus, it was

not materially false or worthy of sanctions.

---

[60]   <u>Gaiardo</u>, 835 F.2d at 482 (citing <u>Jones</u>, 899 F.2d at 1359).

[61]   <u>Gaiardo</u>, 835 F.2d at 483.

[62]   <u>See</u> ABA Model Rules of Professional Responsibility § 3.3

[63]   ECF 37 at 17.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion alleging fraud on the Court is denied. The Court would again advise the Plaintiffs to seek the assistance of counsel.

An appropriate Order memorializing my holding and setting forth renewed case management deadlines follows.

BY THE COURT:


<u>s/ Matthew W. Brann</u>
Matthew W. Brann
United States District Judge