**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARISADHAN PATRA and PETULA VAZ,<br><br>Plaintiffs,<br><br>v.<br><br>PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION, *et al.*,<br><br>Defendants. | No. 4:14-CV-02265<br><br>(Judge Brann) |

**MEMORANDUM OPINION**

**MAY 27, 2020**

# I. BACKGROUND

Defendants have again moved for summary judgment. For the reasons that follow, Defendants' motion is granted.

# II. DISCUSSION

## A. Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[1] Summary judgment is appropriate where "the movant shows that there is no

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[6] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[7] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

---

[2] Fed. R. Civ. P. 56(a).

[3] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

[4] *Clark*, 9 F.3d at 326.

[5] *Id*.

[6] *Liberty Lobby, Inc.*, 477 U.S. at 252.

[7] *Id*.

find for the plaintiff."[8] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[9] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[10] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[11]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12] For movants and nonmovants alike, the

---

8 *Id*.
9 *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
10 *Celotex*, 477 U.S. at 323 (internal quotations omitted).
11 *Id*.
12 *Liberty Lobby*, 477 U.S. at 250.

assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[15] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[16]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[17] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

---

13 Fed. R. Civ. P. 56(c)(1).

14 *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

15 Fed. R. Civ. P. 56(e)(2).

16 Fed. R. Civ. P. 56(c)(3).

17 *Liberty Lobby*, 477 U.S. at 249.

verdict for that party."[18] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[19]

### B. Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts of this matter.

#### 1. Introduction

Dr. Harisadhan Patra and Dr. Petula Vaz signed Contracts of Appointment to employment with Bloomsburg University on May 18, 2010.[20] Dr. Patra was hired as an Assistant Professor in Bloomsburg's Department of Audiology and Speech Pathology beginning August 28, 2010.[21] Dr. Vaz was hired as an Associate Professor in the same department also beginning August 28, 2010.[22]

The relevant collective bargaining agreement provided for annual evaluations.[23] In Patra and Vaz's first through fourth years of service, they received performance evaluations that followed this annual timeframe.[24]

#### 2. Dr. Patra's Evaluations and Non-Renewal

In Patra's first-year evaluation, Dr. Ira Blake, Bloomsburg's provost, stated that Patra was "reported to be a satisfactory instructor by the chairperson, peers

---

18 *Id*.
19 *Id*. at 249-50 (internal citations omitted).
20 Doc. 71 at ¶ 1.
21 Doc. 71 at ¶ 2.
22 Doc. 71 at ¶ 3.
23 *See* Doc. 71 at ¶ 5.
24 *See* Doc. 71 at ¶ 6.

and students," but that "[a]ll evaluations indicate room for improvement."[25] Blake listed ways in which Patra could improve his performance. Blake recommended that Patra's contract be renewed for the following year.[26]

In Patra's second-year evaluation, Blake stated that Patra's "overall performance . . . is satisfactory." But she noted "a need for more improvement during the next evaluation period."[27] Blake listed five areas in which Patra "need[ed] to seek assistance from the chairperson and peers." Blake also encouraged Patra to "review the topics of [certain] workshops in order to identify some that might be helpful."[28]

In Patra's third-year evaluation, Blake stated that Patra's cumulative student evaluations had "plummet[ed] significantly across the board."[29] Robert Marande, Bloomsburg's dean, reported that students had met with him in May 2012 to raise concerns about Patra's teaching.[30] Marande met with Patra, who "confirmed that he would make the appropriate changes to his teaching such that these issues would not occur again. Also, at that time Dr. Patra did not dispute any of the concerns that the students had."[31] Marande also reported that in October 2012 students from a different Patra class "raised concerns regarding Dr. Patra's grading

---

25 *See* Doc. 71 at ¶ 7.
26 *See* Doc. 71 at ¶ 8.
27 *See* Doc. 71 at ¶ 9.
28 *See* Doc. 71 at ¶ 10.
29 *See* Doc. 71 at ¶ 11.
30 *See* Doc. 71 at ¶ 12.
31 *See* Doc. 71 at ¶ 13.

practices."[32] Patra met with Marande, "acknowledged that the issues raised by the students were correct," but did not inform Marande "on how everything was resolved."[33] Marande described Patra's student evaluations as "not very impressive" and noted that on each of three evaluation questions, Patra's rating was over 14% below the college average.[34]

Marande did not recommend renewing Patra's contract for a fourth year.[35] Despite this, Blake did recommend that Patra's contract be renewed for the following academic year.[36] Blake noted that the "plummet[ing]" of student evaluations, "the contradictory peer observations and several student letters (including one from an entire class cohort of 2014) raise serious concern about Dr. Patra's progress as an instructor."[37] With respect to Patra's service, which had been "primarily at the departmental level," Blake "suggest[ed] that Dr. Patra consult with his dean and chairperson regarding additional service opportunities at the college and university levels."[38]

In Patra's fourth year, Bloomsburg's Tenure Committee, by unanimous vote, recommended that Patra's contract not be renewed because of "deficiencies in the areas of teaching, research, and service. In particular there are significant concerns

32 *See* Doc. 71 at ¶ 14.
33 *See* Doc. 71 at ¶ 15.
34 *See* Doc. 71 at ¶ 16.
35 *See* Doc. 71 at ¶ 17.
36 *See* Doc. 71 at ¶ 18.
37 *See* Doc. 71 at ¶ 19.
38 *See* Doc. 71 at ¶ 20.

regarding professional development. Further, the majority of peer and the chair observation[s] indicate that good instructional and professional practice is not consistently evident in this case."[39] Bloomsburg's Evaluation Committee also did not recommend Patra for continued employment.[40]

The acting dean at the time, Jonathan Lincoln, noted in a letter to Patra that "[t]he need for you to address certain aspects of your teaching has been noted annually in evaluations conducted by your dean and the provost since your first year. Your teaching evaluations have not improved and you present no evidence of following previous recommendations to seek assistance for teaching."[41] Further, Lincoln noted that "[y]our activity in the areas of scholarship and service are below expectations for a fourth year faculty member in the College of Science and Technology."[42]

By letter dated January 27, 2014, Patra was advised that his contract would not be renewed for the following year.[43] His contract ended at the end of the Spring 2014 semester – May 30, 2014.[44]

### 3. Dr. Vaz's Evaluations and Non-Renewal

In Vaz's first-year evaluation, Blake reported that Vaz was an "effective instructor" but that her "[s]tudent evaluations present a varied profile and room for

---

39 *See* Doc. 71 at ¶ 21.
40 *See* Doc. 71 at ¶ 24.
41 *See* Doc. 71 at ¶ 22.
42 *See* Doc. 71 at ¶ 23.
43 *See* Doc. 71 at ¶ 25.
44 *See* Doc. 71 at ¶ 26.

improvement."[45] Blake recommended that Vaz's contract be renewed for the following academic year while also "encourag[ing]" Vaz to "consult with her chairperson and peers for instructional strategies in" five discrete areas.[46]

In Vaz's second-year evaluation, Blake found that Vaz's "overall performance as a second-year probationary faculty member [was] sound." Blake also noted that Vaz "should continue addressing the" discrete areas that Blake had set forth in the first-year evaluation.[47] Blake recommended Vaz for a renewed contract.[48]

In Vaz's third-year evaluation, Blake found that Vaz was "reported to be an effective instructor by the chairperson and peers for this evaluation period," with "improvement since the last evaluation period."[49] Blake "suggest[ed] that Dr. Vaz continue to attend to the following areas: clarity and conciseness of explanations, encouragement of active student learning and problem solving, and enhancement of student's knowledge construction and communication skills."[50] Blake also noted that "[t]here is an expressed concern by the dean and chairperson regarding Dr. Vaz's non-use of research equipment and the fact that Bloomsburg University

---

45 *See* Doc. 71 at ¶ 27.
46 *See* Doc. 71 at ¶ 28.
47 *See* Doc. 71 at ¶ 29.
48 *See* Doc. 71 at ¶ 30.
49 *See* Doc. 71 at ¶ 31.
50 *See* Doc. 71 at ¶ 32.

is not the institutional affiliation for her publications to date."[51] Blake recommended that Vaz's contract be renewed for the following academic year.[52]

In Vaz's fourth year, the Tenure Committee, by unanimous vote, recommended that Vaz's contract not be renewed because of "deficiencies in the area[s] of research and service, with particular concerns regarding the lack of professional development. Further, the majority of peer and the chair observations indicate that professional practice is not consistently evident in this case."[53]

In evaluations before her fourth year, Vaz had been encouraged to review her course content and materials for certain classes as a means of improving student evaluations. But the Evaluation Committee reported that Vaz's fourth-year student evaluations indicated "an 'average' rating from close to 50% of our students in key evaluation areas." Per the Evaluation Committee, this was "not an acceptable level of graduate-level teaching performance."[54] The Evaluation Committee also reported that in Vaz's evaluations before her fourth year:[55]

> Dr. Vaz was advised to develop a line of independent and self-driven research in her area of expertise here at Bloomsburg University that would result in peer-reviewed journal publications and research presentations at national and international level conferences. . . . Though Dr. Vaz claims her area of research experience as being in the area of pediatric swallowing disorders and has been provided with departmental equipment funds for that area of research, she shows no evidence of initiating or developing a body of research

51 *See* Doc. 71 at ¶ 33.
52 *See* Doc. 71 at ¶ 34.
53 *See* Doc. 71 at ¶ 35.
54 *See* Doc. 71 at ¶ 36.
55 *See* Doc. 71 at ¶ 37.

> investigation in this area here at Bloomsburg University. Dr. Vaz not only denies herself scholarly progress in her claimed area of expertise, but also potentially precludes students from pursing research opportunities and experience in the area of pediatric swallowing.

The Evaluation Committee found "[m]ost disconcerting . . . Dr. Vaz's performance (or lack thereof) in the area of Service." As the Evaluation Committee reported, "In her third year evaluation, Dr. Vaz was encouraged to increase her active participation in the departmental committees on which she serves, and was also strongly encouraged to submit her name for appointment or election to both College and University-wide committees. Instead, since those recommendations were made, Dr. Vaz has been absent from over 78% of departmental meetings and provides no evidence of attempts to provide service at College and/or University-wide levels."[56]

In concluding its evaluation, the Evaluation Committee reasoned that:[57]

> While Dr. Vaz's teaching performance at the graduate-level may be amenable to improvement, Dr. Vaz's progress in scholarly activity has been limited and her service record has been substandard. When all three areas of evaluation (Teaching, Scholarship, and Service) are taken into account, combined with the expectations that this committee have for a faculty member who was hired at the rank of Associate Professor and who has several years of university-level teaching experience prior to coming to Bloomsburg University, it is the unanimous opinion of this committee that Dr. Vaz is not making acceptable progress towards tenure here at Bloomsburg University.

---

56 *See* Doc. 71 at ¶ 38.

57 *See* Doc. 71 at ¶ 39.

The Evaluation Committee did not recommend Vaz for continued employment at Bloomsburg University.[58] By letter dated January 27, 2014, Vaz was advised that her contract would not be renewed with Bloomsburg University for the following year.[59] Vaz's contract ended at the end of the Spring 2014 semester.[60]

#### 4. Dr. Patra and Dr. Vaz's EEOC Complaints

On December 29, 2012, Patra filed two complaints with the Equal Employment Opportunity Commission.[61] On March 11, 2013, October 31, 2013, and October 14, 2014, Patra filed additional EEOC complaints.[62] Vaz filed EEOC complaints on December 4, 2012, March 11, 2013, October 31, 2013, and October 14, 2014.[63]

### C. Analysis

#### 1. Title VII Employment Discrimination (Counts I, II, and V)[64]

A *prima facie* case of employment discrimination requires the following showing: "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being

58 *See* Doc. 71 at ¶ 40.
59 *See* Doc. 71 at ¶ 41.
60 *See* Doc. 71 at ¶ 42.
61 Doc. 71 at ¶ 54.
62 Doc. 71 at ¶¶ 55-57; Doc. 72-16.
63 Doc. 71 at ¶¶ 58-61.
64 The Court analyzes Title VII discrimination (Plaintiffs' Counts I and II) and Pennsylvania Human Relations Act discrimination (Plaintiffs' Count V) claims under the same legal standard. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643-44 n.4 (3d Cir. 1998). The Court won't, then, discuss Plaintiffs' PHRA discrimination claim separately.

qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position."[65] "To prevail on a claim of disparate treatment under Title VII . . . the plaintiff must demonstrate purposeful discrimination."[66]

An adverse employment action is "one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." It is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." A court may find an adverse action if "an employer's act significantly decreases an employee's earning potential and causes significant disruption in his or her working conditions." By contrast, an employment action that involves "no reduction in pay and no more than a minor change in working conditions," and that "does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action."[67]

Here, the potential adverse actions are Defendants' non-renewal of Patra and Vaz's employment contracts, as well as the Evaluation Committee's negative fourth-year performance evaluations of Patra and Vaz, which factored into the non-

---

65 *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).
66 *Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990).
67 *Torres v. Deblasis*, 959 F. Supp. 2d 772, 780 (E.D. Pa. 2013) (citations and quotations omitted).

renewal of their contracts.[68] Plaintiffs complain of other perceived adverse actions,[69] but, unfortunately, their assertions are misplaced.[70] For example, reducing laboratory space is not an adverse employment action.[71] Teaching assignments that a plaintiff merely sees as unfair or undesirable are not adverse employment actions.[72] Being criticized or spoken to in a harsh, derogatory manner does not constitute an adverse employment action.[73]

But even assuming the existence of a *prima* facie case of discrimination, Plaintiffs here have not shown that Defendants' proffered non-discriminatory reasons for the evaluations and non-renewals were a pretext for discrimination. To discredit a proffered reason, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find

---

68 Defendants argue that these evaluations should not constitute adverse actions, but, as the above facts show, these evaluations were clearly accompanied by the "tangible job consequences" of Plaintiffs' non-renewal. *Shenk v. Pennsylvania*, No. 1:11-CV-1238, 2013 WL 1969311, at *9 (M.D. Pa. May 13, 2013). The first-year through third-year evaluations are distinguishable because, as Defendants point out, both Patra and Vaz had their contracts renewed after their third year of teaching.

69 *See* Doc. 103 at 10-11.

70 The Court acknowledges the United States Court of Appeals for the Third Circuit's statement that "the plaintiffs alleged numerous adverse actions in their counterstatement of facts." *Patra v. Pennsylvania State Sys. of Higher Educ.*, 779 F. App'x 105, 107 (3d Cir. 2019). Based on the record before the Court at this time, as well as the authorities cited below, the Court is compelled to hold that only the non-renewals and evaluations qualify as adverse actions.

71 *Summy-Long v. Pennsylvania State Univ.*, 226 F. Supp. 3d 371, 417 (M.D. Pa. 2016), *aff'd*, 715 F. App'x 179 (3d Cir. 2017).

72 *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 123 (5th Cir. 1991).

73 *Yarnall v. Philadelphia Sch. Dist.*, 57 F. Supp. 3d 410, 421 (E.D. Pa. 2014) (collecting cases).

them unworthy of credence, and hence infer that the employer did not act for the [stated] non-discriminatory reasons."[74] The plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[75] A plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[76]

Plaintiffs have not proven by a preponderance of the evidence that the legitimate reasons offered by Defendants were a pretext for discrimination. Plaintiffs have identified insensitive race-based comments and statements made by Defendants.[77] Yet the Court finds that these comments "are too isolated for a factfinder to reasonably find a nexus between the comments and any potential unlawful discrimination."[78] Further, Plaintiffs point out instances of Defendants holding non-Indian / non-Hindu faculty members to a different standard. But "[i]n the absence of such a significant degree of difference in qualifications that may arouse a suspicion of discrimination, [a district court should] defer to the

---

74 *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).
75 *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996)
76 *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).
77 *See* Doc. 103-7 at ¶ 45A.
78 *Johnson v. Penske Truck Leasing Co.*, 949 F. Supp. 1153, 1180 (D.N.J. 1996).

employer's hiring decisions."[79] The Court fails to find "such a significant degree of difference" here.

### 2. Title VII Retaliation (Counts III and V)[80]

"A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[81] "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[82]

"Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test."[83] "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[84]

Defendants argue that Patra and Vaz cannot prove their *prima facie* case of retaliation because they have not proven a causal connection between (a) their

---

79 *Steele v. Pelmor Labs. Inc.*, 642 F. App'x 129, 135 (3d Cir. 2016).

80 As before, the Court treats Title VII and PHRA claims under the same legal standard.

81 *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (Hardiman, J.) (internal quotation marks omitted).

82 *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

83 *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

84 *Id.*

filing of EEOC complaints against Bloomsburg and (b) the decision not to renew their contracts.[85] According to Defendants, the gist of their rationale was that Patra and Vaz "performed poorly and failed to meet contractual obligations."[86]

Plaintiffs have failed to prove the requisite causal connection. With respect to a "pattern of antagonism," any "disciplinary actions" that Plaintiffs have offered in support of a causation finding do not suffice because Plaintiffs have not offered a "basis for linking the disciplinary actions to [their] [protected activity]."[87] Further, Plaintiffs have not presented a "consistent, continuous course of discriminatory treatment" following the filing of their EEOC complaints.[88] Finally, the Court finds that the ten months between Plaintiffs' first filing of their EEOC complaints and the Evaluation Committee's fourth-year negative evaluations is not an "unusually suggestive temporal proximity."[89]

### 3. First Amendment Retaliation (Count VI)

A First Amendment retaliation claim requires "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the

---

85 *See* Doc. 73 at 9-11.

86 Doc. 73 at 16.

87 *Wells v. Retinovitreous Associates, Ltd.*, 2016 WL 3405457, *3 (E.D. Pa. June 21, 2016) (J. Sánchez) (*citing Barton v. MHM Correctional Servs, Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011).

88 *Wright v. Shore Mem'l Hosp.*, No. CIV. 11-5583 JBS/AMD, 2013 WL 6080072, at *12 (D.N.J. Nov. 19, 2013).

89 *See, e.g., Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 198 (3d Cir. 2015) (ten months did not qualify as an "unusually suggestive temporal proximity"); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (three months did not qualify).

constitutionally protected conduct and the retaliatory action."[90] Speech is "protected conduct" when "(1) in making it, [the plaintiff] spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made."[91]

With respect to speaking as a citizen, when "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[92] The critical question, here, is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Further, "though speech may be protected even if it concerns information related to or learned through public employment, an employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee."[93] As the United States Court of Appeals for the Third

---

90 *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citations omitted).

91 *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quotations omitted).

92 *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Plaintiffs argue that per *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014), *Garcetti* should not control my analysis. I disagree for two reasons. First, *Demers* is a decision from the United States Court of Appeals for the Ninth Circuit and is not binding on this Court. Second, the court in *Demers* limited its holding to speech concerning "teaching and academic writing." *Id.* at 411. Plaintiffs have made no showing that their speech here concerned their teaching or academic writing.

93 *Javitz v. Luzerne Cty.*, No. 3:15-CV-2443, 2018 WL 1545589, at *9 (M.D. Pa. Mar. 29, 2018), *reconsideration denied*, No. 3:15-CV-2443, 2018 WL 2376096 (M.D. Pa. May 24,

Circuit analyzed in a recent decision, it is important whether "[*w*]*ho* [the plaintiff] spoke to, *what* she spoke about, and *why* she spoke at all" fell "outside the scope of her primary job duties and evidence citizen speech."[94] "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social, or other concerns to the community."[95]

To show the requisite "causal link," a plaintiff must show that their "protected activity was a substantial motivating factor in the state actor's decision to take the adverse action."[96] The plaintiff is not required to show that the protected activity was the sole, dominant, or primary factor in the decision.[97] "Defendants can counter this "by showing that [they] would have taken the same action even in the absence of the protected conduct."[98] At that point, Plaintiffs may only prevail by "discrediting [Defendants'] proffered reason for [the employment action], . . . or by adducing evidence . . . that discrimination was more likely than not a motivating or substantial cause of the adverse action."[99]

I find that Plaintiffs have not shown that their protected activity – commentary on Bloomsburg's graduation rates – was "a substantial motivating

---

2018), *and aff'd in part, rev'd in part and remanded sub nom. Javitz v. Cty. of Luzerne*, 940 F.3d 858 (3d Cir. 2019).

94 *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 865 (3d Cir. 2019).

95 *Majewski v. Fischi*, 372 F. App'x 300, 303 (3d Cir. 2010).

96 *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (citations omitted).

97 *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977)).

98 *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

99 *Montone v. City of Jersey City*, 709 F.3d 181, 202 (3d Cir. 2013) (citations omitted).

factor" in Defendants' decisions to issue the fourth-year negative evaluations and ultimately not renew Patra and Vaz's contracts. Just as Plaintiffs have failed to show that Defendants' proffered legitimate reasons for their actions were a pretext for discrimination based on race, religion, or national origin, Plaintiffs have failed to show that Defendants' proffered legitimate reasons for their actions were a pretext for retaliating against Plaintiffs' commentary on graduation rates.[100] This absence of causation is dispositive.

**4. Civil Conspiracy (Count VII)**

A Section 1983 conspiracy claim requires "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[101] A conspiracy without the accompanying deprivation of civil rights does not yield liability.[102] A conspiracy itself requires "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose."[103]

Plaintiffs' conspiracy claim fails for two independent reasons. First, as I explain in the surrounding analysis, Defendants have not deprived Plaintiffs of their civil rights. Second, Defendants have not conspired as a matter of law

---

100 *See Gorum v. Sessoms*, 561 F.3d 179, 188 (3d Cir. 2009) (plaintiff could only make inference that defendant was aware of protected activity); *O'Connell v. Williams*, 241 F. App'x 55, 58 (3d Cir. 2007) ("Because Appellant has not demonstrated that these actions would not have been taken against him had he not [engaged in protected activity], we agree with the determination of the District Court that he has not stated a claim for retaliation.").

101 *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000).

102 *See Holt Cargo Sys. Inc. v. Delaware River Port Auth.*, 20 F.Supp.2d 803, 843 (E.D. Pa. 1998)

103 *Hammond v. Creative Fin. Planning Org., Inc.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992).

because they were not acting as "two or more persons"—they were all acting as agents of Bloomsburg University, an entity within the Pennsylvania State System of Higher Education. "Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people."[104]

#### 5. Hostile Work Environment

Though Plaintiffs have not listed hostile work environment as a formal claim, the parties have, nonetheless, briefed the issue. "To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her [race or religion], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." "The first four elements establish a hostile work environment, and the fifth determines employer liability."[105] "The statute prohibits severe or pervasive harassment; it does not mandate a happy workplace. Occasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace

---

[104] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).
[105] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

and change the very nature of the plaintiff's employment." Factors to be weighed include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." No one factor is dispositive, and the analysis must focus on the "totality of the circumstances."[106]

Defendants argue that Patra and Vaz have not established that any comments made about Patra and Vaz's race and religion were severe or pervasive enough to change the terms and conditions of their employment. Per Defendants, this failure dooms Patra and Vaz's hostile work environment claim.[107] I find that Defendants are correct; the comments that Plaintiffs list were "isolated" and "sporadic" and did "not demonstrate the pervasive atmosphere of harassment required to prove a Title VII violation."[108]

### 6. Plaintiffs' State Law Claims (Counts IV, V, VIII, IX, X, and XI)

Under Pennsylvania statute, sovereign immunity bars claims brought against the Commonwealth, its agencies, and its employees when they are acting within the scope of their office or employment.[109] Sovereign immunity applies to claims

---

106 *Jensen v. Potter*, 435 F.3d 444, 451-52 (3d Cir. 2006) (Alito, J.).
107 *See* Doc. 73 at 16-17.
108 *King v. City of Philadelphia*, 66 F. App'x 300, 305 (3d Cir. 2003).
109 1 Pa. C.S. § 2310.10.

that plaintiffs assert against Commonwealth officials in their individual capacities. And it encompasses liability for intentional torts.[110]

An employee's actions are within the scope of their employment if the actions are of the kind the employee was employed to perform, occurred substantially within the employee's authorized time and space limits, and are "actuated, at least in part, by a purpose to serve the master."[111] "Even willful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress."[112]

Defendants argue that sovereign immunity protects them from Patra and Vaz's state law claims. According to Defendants, Defendants were within the scope of their employment during all of these events, and that triggers the protections of sovereign immunity.[113] Plaintiffs' opposition argument is disjointed and difficult for the Court to interpret. It appears to rely on the Eleventh Amendment of the United States Constitution, which provides a different grant of immunity than does the Pennsylvania statute I cite above.[114] Further, Plaintiffs'

---

110 *See Shoop v. Dauphin Cty.*, 766 F. Supp. 1327, 1334 (M.D. Pa.), *aff'd*, 945 F.2d 396 (3d Cir. 1991).

111 *Johnson v. Townsend*, 314 F. App'x 436, 440 (3d Cir. 2008)

112 *Cooper v. Beard*, No. CIV.A. 06-0171, 2006 WL 3208783, at *16 (E.D. Pa. Nov. 2, 2006).

113 *See* Doc. 73 at 23-24.

114 Plaintiffs' statement that the Pennsylvania legislature has waived sovereign immunity for Pennsylvania Human Relations Act claims is incorrect in this context. "[T]he legislature waived the Commonwealth's immunity from suit under the PHRA—but only in state court." *Nelson v. Com. of Pennsylvania Dep't of Pub. Welfare*, 244 F. Supp. 2d 382, 391 (E.D. Pa. 2002).

opposition argument does not contest that Defendants were acting within the scope of their employment during the relevant events here.[115]

Sovereign immunity bars Plaintiffs' Count IV (aiding and abetting discrimination and retaliation pursuant to the PHRA), Count V (discrimination and retaliation pursuant to the PHRA), Count VIII (retaliation in violation of Pennsylvania's Whistleblower Law), Count IX (defamation), Count X (intentional infliction of emotional distress), and Count XI (loss of consortium).

## III. CONCLUSION

For the above reasons, Defendants' motion for summary judgment is granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

[115] *See* Doc. 103 at 21-22.